# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DORSEY J. REIRDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-16-445-SPS |
| | ) |
| **CIMAREX ENERGY COMPANY AND** | ) |
| **CIMAREX ENERGY CO. OF** | ) |
| **COLORADO,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

This matter comes before the Court on partial motion for summary judgment by Defendants Cimarex Energy Company and Cimarex Energy Company of Colorado (together, "Cimarex"). For the reasons set forth below, the Defendants' Motion for Summary Judgment on All Claims Associated with the Douglass Leases and Brief in Support [Docket No. 53] is GRANTED.

**Procedural History**

Plaintiff filed this case in this Court on October 14, 2016. Docket Nos. 1-2. On January 19, 2017, this Court held a status and scheduling conference, at which time the Court granted the parties leave to file a series of partial summary judgment motions without prejudice to ultimately filing a summary judgment motion on the main merits of the case. Docket No. 37. Plaintiff filed an Amended Class Action Complaint on October 11, 2017, following this Court's ruling on a partial Motion to Dismiss. Docket Nos. 25, 42, 43. Defendants then filed a series of partial summary judgment motions. Docket Nos. 53-55.

The Court then stayed the case on June 26, 2018, pending formal mediation by the parties, and the case was thereafter reopened following the conclusion of mediation on September 25, 2018. Docket Nos. 78, 81. Plaintiff contends in the Amended Class Action Complaint that Cimarex used, caused to be used, and/or allowed third parties to use natural gas from Oklahoma wells, but that despite express provisions in the oil and gas leases, Cimarex "knowingly and systematically underpaid royalty" to him through a policy of not paying royalties for fuel gas, and that Cimarex failed to disclose on monthly royalty checkstubs that it "was not paying royalty on the full volume and value of production from the Oklahoma wells." Docket No. 43, pp. 1-2, ¶¶ 1-6.

In addition to the personal allegations, Plaintiff asserts that he is acting as a representative of a class defined as:

> All non-excluded persons or entities who are or were royalty owners in Oklahoma wells where Cimarex, including its predecessors or affiliates, is or was the well operator and working interest owner (or, as a non-operating working interest owner, Cimarex separately marketed gas), and who, from January 1, 2013 are or were entitled to share in royalty proceeds payable under oil and gas leases that contain an express provision stating that royalty will be paid on gas used off the lease premises and/or in manufacture of products.
>
> The persons or entities excluded from the Class are: (1) agencies, departments or instrumentalities of the United States of America and the State of Oklahoma; (2) officers of the Court involved in this action; (3) publicly traded oil and gas exploration companies and their affiliates; and (4) persons or entities that Plaintiff's counsel is, or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

Docket No. 43, pp. 3-4, ¶ 15. The class allegations indicate that the common questions of fact include: (a) whether, under express terms of the oil and gas leases under which Reirdon and the putative Class are entitled to be paid royalty, Cimarex has or had a duty to

2

pay royalty on Fuel Gas; (b) whether Cimarex has paid the full amount of royalty owed on Fuel Gas; and (c) whether Cimarex's uniform royalty payment methodology breaches Cimarex's express duties to pay royalty on Fuel Gas. *See* Docket No. 43, pp. 4-5, ¶ 19. Plaintiff's First Amended Class Action Complaint sets out the following enumerated causes of action: (I) breach of contract, (II) unjust enrichment, and (III) fraud (actual and constructive) and deceit, as well as enumerated claims for (IV) an accounting and (V) an injunction. As to the breach of contract claim, at issue here, the Plaintiff alleges that the Defendants breached the express covenant in each oil and gas lease containing language related to "gas . . . used off the leased premises, or in the manufacture of products therefrom . . . or used by lessee off the lease premises for any purpose." Docket No. 43, p. 11. Specifically, Plaintiff alleges that the Defendants "systematically failed to pay royalty to Plaintiff and the putative Class on such Fuel Gas through the use of a uniform royalty payment methodology." *Id.*[1]

## Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] Because a class has not been certified, the Court is only addressing the specific claims of Plaintiff, and potential claims of putative class members are not addressed.

325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

**Factual Background**

The undisputed facts reflect that Magnum Hunter, a wholly owned subsidiary of Cimarex Energy Co. is the lessee, but Cimarex distributes the royalties associated with the oil and gas wells and leases at issue in this lawsuit. Magnum Hunter sells the gas to Madill Gas Processing Company, L.L.C. ("Madill"), and delivers the gas to Madill at or near Madill's North Madill Compressor Station in Marshall County, Oklahoma. A pro rata share of the gas is used off the leased premises as Fuel Gas to power compressors which move the gas from the leased premises to Madill's gas processing plan. A pro rata share is also used to power machinery and equipment at Madill's gas processing plant, including compressors, an amine treater, and generators.

After the initiation of this lawsuit, Defendants paid royalties on the value of the Fuel Gas used off premises to power the compressors and amine treater from January 1, 2013 to present, but to date have not paid royalties on a pro rata share of Fuel Gas used off the leased premises to: (i) cryogenically process gas into natural gas liquids and residue gas, (ii) deliver gas from the plant to a residue gas pipeline at the plaint tailgate, and (iii) run generators that were used to power the Madill processing plant before it switched to electrical power in April 2014.

As to the present partial motion for summary judgment, Cimarex seeks summary judgment with regard to Plaintiff's breach of contract claims for royalty as they apply to three March 1, 1990 oil and gas leases: (i) between LoRene T. Reirdon (lessor) and Ed Douglass (lessee), (ii) between B.N. Taliaferro, Jr. (lessor) and Ed Douglass (lessee), and (iii) (again) between LoRene T. Reirdon (lessor) and Ed Douglass (lessee) (collectively, "the Douglass Leases").

**Analysis**

Cimarex asserts the express language of the Douglass Leases does not obligate Defendants to pay royalty on gas consumed off the leased premises as Fuel Gas. In support, they contend that the royalty clauses in the Douglass Leases specify that: (i) royalties are to be calculated based on the lessee's net proceeds at the well, and (ii) no additional payment is owed based on the value of off-lease fuel.

The relevant royalty clause in the Douglass leases states as follows:

> The royalties to be paid by Lessee are . . . (b) on gas, including casinghead gas and all other gaseous or vaporous substances, produced from said land and sold or used off the premises, or in the manufacture of gasoline or in the extraction of Sulphur or any other product, the net proceeds at the well of 3/16ths of the gas so sold or used, such *net proceeds* to be the proceeds received by Lessee *calculated* at, or allocated back to, the well from which produced *after allowance and deduction for a fair and reasonable charge for gathering, compressing and making merchantable* such gas as is incurred by Lessee between the well-head and the point at which such gas is valued for the purpose of determining proceeds to Lessee[.]

Docket No. 53, Ex. 2, p. 2 (emphasis added). Additionally, the Lease contains a "free use" clause which states: "Lessee shall have free use of oil, gas and water from said land (except water from Lessor's wells, reservoirs and tanks) for all operations hereunder or on lands

5

consolidated therewith (including repressuring, pressure maintenance, cycling, injecting, waterflooding and secondary and/or enhanced recovery operations), and any royalty otherwise payable hereunder shall be computer after deducting any so used." *Id.*

Here, Magnum Hunter is a wholly owned subsidiary of Cimarex Energy Co., and Cimarex Energy Co. distributes royalties to Plaintiff in accordance with the terms of the Sinclair Leases. Under Oklahoma law, Cimarex is responsible for paying the royalties in accordance with the applicable lease terms. *See* 52 Okla. Stat. § 570.4 ("Each producing owner shall pay or cause to be paid to the operator the royalty share of its gas sales proceeds, valued according to such producing owner's lease terms[.]"). Accordingly, the Court finds Cimarex the responsible party for any royalties owed under the lease terms. The remaining question, therefore, is whether royalties are owed for Fuel Gas off the leased premises.

Under Oklahoma law, "[a]lthough oil and gas leases are to be construed against lessee and in favor of lessor, the contract must be taken as a whole so as to give effect to every part using each clause to help interpret the others and that apply the related rule of interpretation, that the intention of the parties is to be ascertained from the writing alone if possible." *Roye Realty & Developing, Inc. v. Watson*, 1996 OK 93, ¶ 33, 2 P.3d 320, 329 (internal citations and quotations omitted). In examining an oil and gas lease, the Court is to "use the plain meaning of the terms when doing so." *Mittelstaedt v. Santa Fe Minerals, Inc.*, 1998 OK 7, ¶ 9, 954 P.2d 1203, 1206. This requires complying with the "reasonable intendment of the parties, if ascertainable from within four corners of the contract." *Davon Drilling Co. v. Ginder*, 1970 OK 51, ¶ 11, 467 P.2d 470, 472. Further, "[t]he whole of the

contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 Okla. Stat. § 157. However, it is "[a] fundamental precept of contract law in Oklahoma [] that the law will not make a better contract than the parties themselves entered." *Roye Realty*, 1996 OK 93, ¶ 33, 2 P.3d at 329.

Defendants contend that the contract clauses are unambiguous and specify how royalties are to be paid, *i. e.*, for gas sold, used off the premises, or used to extract products from the gas stream, the lessor receives royalties that are capped by the lessee's net proceeds at the well. Defendants argue that permitting royalties on "an additional sum" based on off-lease Fuel Gas would impermissibly expand the royalty obligation. Put another way, Defendants assert that the royalty clause permits an "allowance and deduction" for these activities at issue, namely gathering, compressing, treating, and processing the gas production.

The Plaintiff contends that Defendants' arguments are countermanded by their very own actions in their corporate royalty payment policy. Defendants say that it is irrelevant that they "free[] Plaintiff of the burden of many of these fuel charges," because they do not *have* to pay royalties to power the compressors and amine treaters and *could* take that into consideration when calculating net proceeds at the well, although they do not. *See* Docket No. 53, p. 8. But here, the Court looks only to the language of the contracts at issue under the breach of contract claim. *See* 15 Okla. Stat. § 154 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").

7

Turning to the language of the Douglass Leases, Defendants point to the royalty clause itself and the "free use" clause, asserting that the plain language and meaning of these clause relieves them of the obligation to pay royalties on the Fuel Gas because the royalty clause specifically defines "net proceeds at the well" as "the proceeds received by Lessee calculated at, or allocated back to, the well from which produced after allowance and deduction for a fair and reasonable charge for fathering, compressing and making merchantable such gas as is incurred by the Lessee between the well-head and the point at which such gas is valued for the purpose of determining proceeds to the Lessee." *See* Docket No. 53, Ex. 3. Defendants also contend that the "free use" clause relieves them of the obligation to pay royalty on Fuel Gas consumed off the leased premises. Plaintiff's response is that the royalty clause expressly requires the payment of royalty on all gas sold or used off the premises, and that the "free use" clause does not apply to gas used off the lease.

In focusing on the lease language at issue here, Plaintiff contends that a recent Oklahoma case out of Grady County bolsters his argument. In that case, there were two royalty clauses at issue: (i) "To pay lessor for gas from each well where gas only is found, the equal one-eighth (1/8) of the gross proceeds at the prevailing market rate, for all gas used off the premises, said payments to be made monthly;" and (ii) "To pay lessor for gas of whatsoever nature or kind produced and sold or used off the premises, or used in the manufacture of any products therefrom, one-eighth (1/8) at the market price at the well for the gas sold, used off the premises, or in the manufacture of products therefrom, said payment to be made monthly." Docket No. 64, Ex. 1, *Pummill v. Hancock Exploration*

8

*LLC, et al.*, Case No. CV-2011-82 (Okla. Dist. Ct. Grady Cty. Feb. 9, 2016) (*Pummill* Order II).

In addressing this language, the Oklahoma District Court held in *Pummill* that "Defendants owe royalty on gas from the well used off the lease by Defendants (or midstream companies through whom Defendants market gas) in gas gathering systems, gas plants and transmission pipelines per the express terms of the Plaintiffs' leases." *See* Docket No. 64, Ex. 1, *Pummill* Order II, at p. 51, ¶ 45. On appeal, the Oklahoma Court of Civil Appeals found no error in this holding, noting that the Defendants in that case (which included the Defendants in this case) did not challenge this finding. *Pummill, et al. v. Hancock Exploration, et al.*, 2018 OK CIV APP 48, ¶ 46, 419 P.3d 1268, 1280, *cert. denied* Case No. 114703 (May 21, 2018). *See also Chieftain Royalty Co., et el. V. Apache Corp.*, Case No. CJ-2012-81, p. 14 (Dist. Ct. Caddo Cty. Jan. 24, 2019) (Lessee is "obligated to pay royalty on gas from Plaintiffs' wells used off the lease by Apache (or a midstream gas gathering and/or processing company through whom Apache markets gas) as fuel or otherwise in gathering systems and gas plants."). Moreover, the District Court for the Western District of Oklahoma has used the marketable condition rule to hold that "Oklahoma courts would not allow the various 'free use' clauses, or the implied right of free use, to be employed to pass on a substantial portion of the post-production treatment costs to those lessors with market value leases." *Roberts Ranch Co v. Exxon Corp.*, 43 F. Supp. 2d 1252, 1256-1257 (W.D. Okla. 1997). *See also Wood v. TXO Production Corp.*, 1992 OK 100, ¶ 5, 854 P.2d 880, 881 (in applying the implied duty to market, "We are not, based upon the facts before us, prepared to require the lessor to bear compression costs as

9

a matter of law where there is no agreement between the lessor and lessee to share those costs."). In contrast to the lease language at issue in those cases, the Douglass Leases state:

> The royalties to be paid by Lessee are . . . (b) on gas, including casinghead gas and all other gaseous or vaporous substances, produced from said land and sold or used off the premises, or in the manufacture of gasoline or in the extraction of Sulphur or any other product, the net proceeds at the well of 3/16ths of the gas so sold or used, such net proceeds to be the proceeds received by Lessee calculated at, or allocated back to, the well from which produced after allowance and deduction for a fair and reasonable charge for gathering, compressing and making merchantable such gas as is incurred by Lessee between the well-head and the point at which such gas is valued for the purpose of determining proceeds to Lessee[.]

Docket No. 53, Ex. 2, p. 2. Importantly, these royalty clauses expressly defined what "net proceeds at the well" are for gas sold off the lease, including what is deductible from the royalty payment, including "a fair and reasonable charge for gathering, compressing and making merchantable such gas." This is for all gas so used by the Lessee "between the well-head and the point at which such gas is valued for the purpose of determining proceeds to Lessee." Docket No. 53, Ex. 4. The Court finds that the Douglass Leases contain language substantively different from those discussed in the *Pummill* Order II and that under these express terms, Defendants are allowed to deduct from the royalty payment this "fair and reasonable charge [] between the well-head and the point at which such gas is valued[.]" *See* 15 Okla. Stat. § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). Accordingly, summary judgment is granted as to the Douglass Leases.

## CONCLUSION

Consequently, **IT IS ORDERED** that the Defendants' Motion for Summary Judgment on All Claims Associated with the Douglass Leases and Brief in Support [Docket No. 53] is hereby GRANTED.

**DATED** this 21st day of March, 2019.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma